*In re* FORFEITURE OF BAIL BOND

(PEOPLE v KANG)

Docket No. 162278. Submitted February 8, 1995, at Grand Rapids. Decided April 3, 1995, at 9:25 A.M.

   Myung Won Kang was released from custody with regard to an armed robbery charge after cashier's checks were deposited by Min Nam Lee to satisfy the cash or surety bond that had been set by the district court. Thereafter, pursuant to a plea agrement, Kang pleaded no contest in the Bay Circuit Court, Eugene C. Penzien, J., to a charge of unarmed robbery. He failed to appear at a subsequent hearing regarding his motion to set aside his plea and for sentencing. The court ordered the bond forfeited and authorized the issuance of a bench warrant. Kang was arrested on unrelated charges more than seven months later in New Jersey. After his arrest, but before his return to Michigan pursuant to a hold placed on Kang by the Bay County Prosecutor's office, Lee moved, pursuant to MCL 765.15; MSA 28.902, to set aside the bond forfeiture order. The court denied the motion, finding that the provisions in the statute for setting aside a forfeited bond had not been met because Kang had not been returned to Bay County, Kang was the only person authorized by MCR 6.106, before its amendment in 1992, to post the bond and therefore was the only one authorized to petition for its return, and Kang was in fact the person who posted the bond because his was the only name on the bail bond form. Lee appealed.

   The Court of Appeals *held:*

   1. The trial court erred in interpreting the requirement of MCL 765.15(a); MSA 28.902(a) that a defendant be apprehended to exclude a person, like Kang, held in custody in another state. A person is apprehended within the meaning of § 15(a) when that person is held in custody in another state.

   2. Because certain other requirements in addition to apprehension are contained in § 15(a), e.g., the ends of justice must

REFERENCES

Am Jur 2d, Bail and Recognizance §§ 93, 192.
Bail: effect on surety's liability under bail bond of principal's incarceration in other jurisdiction. 33 ALR4th 663.

not have been thwarted and the depositor must pay the costs of the apprehension, an intention to exclude additional requirements may be inferred.

3. The trial court erred in holding that only Kang could post a cash bond and make a claim for its return. MCR 6.106, as it existed at all times relevant to this appeal, permitted a third party to deposit and retain title to a cash bond and, when the case was concluded, be entitled to the return of the money as provided by law.

4. The trial court clearly erred in concluding that the record established that Kang posted the funds. The record shows that Lee deposited the funds on behalf of Kang.

5. The case must be reversed and the matter must be remanded to the trial court for findings regarding whether the ends of justice would be thwarted by setting aside the forfeiture or what the applicable costs would be.

Reversed and remanded.

1. BAIL — BONDS — FORFEITURE — SETTING ASIDE FORFEITURE — WORDS AND PHRASES — "APPREHEND."
   A person is "apprehended" within the meaning of the statute regarding the setting aside of an order forfeiting bail or bond when the person who forfeited the bond or bail is held in custody in another state; the statute does not qualify the term "apprehended" to require delivery of the person to a particular location (MCL 765.15[a]; MSA 28.902[a]).

2. BAIL — BONDS — TITLE TO BONDS — THIRD PARTIES.
   MCR 6.106(D), before its amendment in 1992, permitted a third party to deposit and retain title to a defendant's cash bond and, when the case was concluded, be entitled to the return of the money as provided by law.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, *Samuel R. Smith,* Chief Appellate Attorney, and *Susan L. LeDuc,* Deputy Chief Assistant Prosecutor, for the people.

*Patrick L. Chatterton,* for Min Nam Lee.

Before: MURPHY, P.J., and MACKENZIE and HOEKSTRA, JJ.

HOEKSTRA, J. Appellant Min Nam Lee appeals

as of right from an order denying his motion to set aside a bond forfeiture order pursuant to MCL 765.15; MSA 28.902. We reverse.

Defendant Myung Won Kang was charged in Bay County with armed robbery and released on November 21, 1990, after cashier's checks in the amount of $50,000 were deposited to satisfy the cash or surety bond that had been set by the district court. Subsequently, pursuant to a plea agreement, defendant pleaded no contest to a charge of unarmed robbery and, on May 21, 1991, was to appear for a hearing regarding his motion to set aside the no-contest plea and for sentencing. Defendant failed to appear and the court ordered the bond forfeited and authorized the issuance of a bench warrant.[1]

Defendant was arrested on unrelated charges on December 22, 1991, in the State of New Jersey. Thereafter, a hold was placed on defendant by the Bay County Prosecutor's office for his return to Michigan. He remained in custody in New Jersey until his return to Michigan on July 19, 1994. On August 29, 1994, defendant was sentenced to a term of nine to fifteen years' imprisonment for the unarmed robbery conviction.

Meanwhile, on December 28, 1992, appellant, who was claiming to be the depositor of the forfeited bond, moved under MCL 765.15; MSA 28.902 to set aside the forfeiture of the $50,000 cash bond. At a hearing on February 22, 1993, appellant's motion was denied.

The trial court denied appellant's motion to set aside the forfeiture order for three reasons. First, the provisions for setting aside a forfeited bond in MCL 765.15(a); MSA 28.902(a) had not been met because defendant, who was still in the State of

---

[1] The trial court denied defendant's motion to set aside his no contest plea after hearing arguments by defendant's attorney.

New Jersey, had not been returned to the county where the bond was posted. Secondly, defendant was the only person authorized to post the bond pursuant to the language of MCR 6.106 before its amendment in 1992, and, therefore, was the only one authorized to petition for its return. And finally, the record indicated that defendant, not appellant, was in fact the one who posted the bond because his was the only name on the bail bond form.

I

One of the reasons appellant's motion was denied by the trial court was because defendant was not "in the custody of the authorities of Michigan." Impliedly, the trial court interpreted the requirement of MCL 765.15(a); MSA 28.902(a) that a defendant be "apprehended" to exclude a person held in custody in another state.

We have not been provided a citation of, nor have we found, any authority that addresses this precise issue. We believe that the trial court's decision is not consistent with a common sense reading of the statute. We hold that a person is "apprehended" within the meaning of MCL 765.15(a); MSA 28.902(a) when that person is held in custody in another state.

A

Before its amendment in 1993 by 1993 PA 343, MCL 765.15(a); MSA 28.902(a) read as follows:[2]

If such bond or bail be forfeited, the court shall enter an order upon its records directing, within

---

[2] The amendments do not involve significant changes to those portions of MCL 765.15(a); MSA 28.902(a) at issue in this case.

45 days of the order, the disposition of such cash, check or security, and the treasurer or clerk, upon presentation of a certified copy of such order, shall make disposition thereof. *The court shall set aside the forfeiture and discharge the bail or bond, within 1 year from the time of the forfeiture judgment, in accordance with subsection (b) of this section if the person who forfeited bond or bail is apprehended and the ends of justice have not been thwarted and the county has been repaid its costs for apprehending the person.*

We believe the legislative purpose of § 15(a) is to provide a statutory provision to effect the recognized purpose of a bond. It is well settled that the purpose of a bond is to assure the appearance of a defendant and not to collect revenue. *People v Benmore,* 298 Mich 701, 707; 299 NW 773 (1941); *People v Harbin,* 88 Mich App 341, 343; 276 NW2d 607 (1979). In light of this recognized purpose, we see no reason to read § 15(a) as narrowly as the trial court did.

Unless defined in the statute, every word in a statute should be given its plain and ordinary meaning. *People v Gregg,* 206 Mich App 208, 211; 520 NW2d 690 (1994). When terms are not expressly defined by a statute, a court may consult dictionary definitions. *Id.* at 212. *The Random House Webster's College Dictionary* (1992) defines "apprehend" to mean "to take into custody." The word "apprehend" appears to have no legal connotation beyond its common meaning; Black's Law Dictionary (6th ed) defines "apprehend" as "to take hold of . . . ." To suggest, as the trial court did, a requirement that a person had to be delivered to a particular location simply infers something more than ordinary usage requires.

Had the Legislature intended to require more than the holding or taking into custody of a per-

son, they could have included language requiring delivery of the person to a particular location, as they did elsewhere in the Code of Criminal Procedure.

MCL 765.26; MSA 28.913, which also applies to situations involving bail, provides in relevant part:

> In all criminal cases where any person or persons have entered *into any recognizance for* the personal appearance of another and such bail and surety shall afterwards desire to be relieved from his responsibility, he may with or without assistance, arrest the accused *and deliver him at the jail or to the sheriff of said county.*

The Legislature, not having qualified the apprehension in § 15(a) to require delivery of the person to a particular location as they did in § 26, we likewise decline to do so.

Furthermore, § 15(a) contains other qualifying provisions in addition to apprehension. To obtain relief, the ends of justice must not have been thwarted and the depositor must pay the costs of the apprehension. Utilizing the concept of *expressio unius est exclusio alterius,* we conclude that because certain other requirements in addition to apprehension are contained in § 15(a), an intention to exclude additional requirements can be inferred. See *Michigan Ass'n of Intermediate Special Ed Administrators v Dep't of Social Services,* 207 Mich App 491, 497; 526 NW2d 36 (1994).

By interpreting the apprehension requirement to include arrests in other states, we are mindful of the fact that the production of persons from one state to another is now routinely accomplished pursuant to either the Uniform Criminal Extradition Act, MCL 780.1 *et seq.*; MSA 28.1285(1) *et seq.,* or the Interstate Agreement on Detainers, MCL 780.601 *et seq.*; MSA 4.147(1) *et seq.* These

statutes provide reliable means through which law enforcement officials in the various states can place effective holds on prisoners in other states and make arrangements to secure their return. In this case, the record indicates that the prosecutor placed such a hold.[3]

B

We recognize our decision could be construed as contrary to the holding in *People v McCracken,* 11 Mich App 553; 161 NW2d 758 (1968). In *Mc-Cracken,* a panel of this Court held that a surety could not have an order of forfeiture set aside when the defendant failed to appear because he was incarcerated by federal authorities in another state. *McCracken* relied on what is referred to as the majority rule in these types of cases. The majority rule holds generally that incarceration in another state does not relieve a surety of the obligation to produce the principal.

We choose not to follow *McCracken* for two reasons. First, support for the majority rule has eroded in most of the recent opinions in other jurisdictions. See anno: *Bail: effect on surety's liability under bail bond of principal's incarceration in other jurisdiction,* 33 ALR4th 663, 667. Secondly, there is no indication that the *Mc-Cracken* Court was interpreting the statutory language of § 15(a). In fact, the opinion, which discussed the forfeiture of a surety bond, did not state on what basis, statutory or otherwise, the motion to set aside was decided. We believe that application of § 15(a) in the present situation requires a different result than that reached by this Court in *McCracken, supra.*

[3] It is not clear from the record under which statute the prosecutor proceeded.

II

The trial court also denied appellant's motion on the basis of its belief that only a defendant could post a cash bond. Before its amendment in 1992, MCR 6.106(D) read as follows:

(1) If the court decides that the defendant cannot be released on his or her own recognizance or conditionally, then money bail with or without conditions may be required to assure his or her appearance.

(2) If the court finds that the defendant's appearance cannot otherwise be assured, it may require the defendant to post a surety bond or cash in the full amount of the bail, at the defendant's option. In making this finding, the court shall consider the factors listed in subrule (E) and state the reasons why a surety bond, or cash in the full amount of the bail, is necessary.

(3) Unless the court requires bail as provided in subrule (D)(2), the court shall advise the defendant of the option to satisfy the monetary requirement of bail under subrule (D)(3)(a) or (b).

(a) The defendant may post cash in the full amount of the bail set by the court or a surety bond written by a person or company licensed to write surety bonds.

(b) The defendant, or any person other than an attorney acting in the defendant's behalf or a surety referred to in subrule (D)(3)(a), may deposit with the clerk or peace officer having custody of the defendant, currency equal to 10 percent of the bail, but at least $10. The court may require additional security or other conditions of the defendant.

(4) The court may accept the equivalent of cash as provided by law.

Subrule D(3)(a) allowed a defendant the option of posting the full amount of the bond in cash or by obtaining a surety. The rule did not address the

issue of who could provide the funds if cash was posted, nor did it make any provisions regarding who retained title to the funds in the event that a person other than the defendant supplied the money.

In *Isbell v Bay Circuit Judge,* 215 Mich 364; 183 NW 721 (1921), our Supreme Court recognized that funds provided by a person other than the defendant that were posted as a cash bond were properly ordered returned to the person making the deposit. In *Isbell,* the plaintiff deposited $500 in cash to secure the release of his son on criminal charges. At the conclusion of the case, the trial court ordered that a portion of the money be retained to satisfy the fines and costs and the balance be paid to the plaintiff's son on whose behalf the money had been deposited. Our Supreme Court held that where the source of the funds was undisputed it was proper to return the money to the person making the deposit. *Id.* at 371.

Further, MCR 6.106 was substantially amended effective June 1, 1992. The corresponding section of the amended court rule provides in relevant part:

(E) Money Bail. If the court determines for reasons it states on the record that the defendant's appearance or the protection of the public cannot otherwise be assured, money bail, with or without conditions described in subrule (D), may be required.

(1) The court may require the defendant to

(a) post a bond that, at the defendant's option, is executed

*   *   *

(ii) by the defendant, or by another who is not a licensed surety, and secured by

[A] a cash deposit, or its equivalent, for the full
bond amount, or . . . . [MCR 6.106.]

Clearly the present court rule contemplates
third parties depositing and retaining title to
funds to secure the release of a defendant. The
amended rule, in effect, adopts the holding in the
*Isbell* case with respect to the rights of third-party
depositors.[4] The trend in the law thus appears to
acknowledge the right of a defendant to opt for
another person to deposit the amount of the bond
on the defendant's behalf, and for that person to
retain his interest in the funds if the terms of the
bond are met.

Consistent with *Isbell, supra,* and what we per-
ceive to be the current trend in the law, we
conclude that the trial court erred in holding that
only defendant could post a cash bond and make a
claim for its return. Our interpretation of the
then-existing court rule would permit a third
party to deposit and retain title to a cash bond
and, when the case was concluded, be entitled to
the return of the money as provided by law.

### III

In addition to finding that appellant had no
claim under MCR 6.106, the trial court also found
that the record established that defendant was the
sole depositor of the money. The trial court stated:

"Mr. Kang is the one who deposited the money.
I don't know who gave it to him, and I don't think
it matters, but that was his money. He signed the
bond. No one else signed the bond.
. . . The Court is not obliged to go searching

---

[4] Although *Isbell* dealt with the interpretation of a statute, we
believe its reasoning is applicable to the interpretation of the court
rule at issue.

around or listening to people who come in and claim that they were the ones who provided the money to the—to the defendant."

A trial court's findings of fact may not be set aside unless clearly erroneous. MCR 2.613(C). We completely agree with the trial court that it was not required to make an independent investigation to determine the source of the money, nor was the trial court required to hold hearings to determine who the proper claimant may have been. A trial court determines who furnished funds by examining the record of deposit made by the clerks, sheriff's deputies, or police officers at the time the bail was posted. See *Isbell, supra.*

In this case, the trial court erred in concluding that the record established that defendant posted the funds. Although defendant was the only person who signed the actual bail bond form, attached to that form are two receipts, both of which show that appellant deposited the funds on behalf of defendant. One is a receipt prepared at the jail, presumably at the time the funds initially were received, and the second is a district court receipt acknowledging acceptance of the money by the district court from the sheriff's department. On the basis of this record, the trial court's findings regarding the identity of the depositor of the $50,000 were clearly erroneous.

Because the trial court rejected appellant's claim on the basis of standing and a failure to comply with the apprehension requirement of § 15(a), the trial court made no findings regarding whether the ends of justice would be thwarted by setting aside the forfeiture or what the applicable costs would be. Therefore, this case is reversed and remanded to the trial court to address those issues. We do not retain jurisdiction.

Reversed and remanded.